———————o———————

KESSINGER ET AL. *v.* KESSINGER ET AL.

WILL:—*Undue Influence.*—*Wife.*—An influence in procuring the execution of
a will, which when exercised by a wife may be lawful and proper, may be
illegitimate and undue when exercised by a woman living in unlawful inter-
course with the testator.

APPEAL from the Henry Common Pleas.

WORDEN, C. J.—This was a complaint by the appellees against the appellants, to set aside the last will and testament of Daniel B. Kessinger, deceased, and the probate thereof.

The grounds of contest are stated to be, "first, that at the time of the execution of the supposed will the testator was of unsound mind; and, second, that the execution of the will was brought about and obtained by the fraud and undue influence of Catharine Kessinger, Reuben Kessinger, and his wife, Hannah Kessinger.

Issue, trial, verdict, and judgment for the plaintiffs below. The following is the verdict of the jury:

"We, the jury, find for the plaintiffs, on the grounds, first, that Daniel B. Kessinger was of unsound mind at the time the will was executed; second, undue influence; such as Catharine Kessinger, a short time before the will was executed, said she would have the will made to suit her this time. Also Reuben Kessinger, a short time before the will was executed, told Daniel B. Kessinger that his son George Kessinger had been trying to rob him, Daniel B. Kessinger."

Complaint is made by the appellants of error in the admission of two items of evidence. First, in the evidence of Susannah Myers. She was asked a question which the record shows was "objected to but allowed." The record does not show that any ground of objection was pointed out to the court, nor that any exception was taken to the ruling.

The other item is the introduction of a previous will prepared by the direction of the testator. The same observation may be made in reference to this as to the above. In respect to this item the record is as follows:

"Exhibit B," the will, "offered in evidence, objected to by the defendants, objection overruled, and read in evidence, to wit," etc.

This is contained in the bill of exceptions, but it is not shown that any ground of objection was pointed out, or any exception taken.

No authorities need be cited to show that no question is

Kessinger *et al.* *v.* Kessinger *et al.*

properly reserved for our decision, arising upon the introduction of the evidence.

The appellants asked, but the court refused, the following instruction.

"If the jury believe from the evidence that the wife of the deceased died some thirty or forty years ago, and the deceased and Catharine Kessinger commenced living together about that time, and continued to live together up and until the death of the testator, and had children born to them and raised them up, the fact as to whether the deceased and Catharine were ever married or not makes no difference in this case, and should not be regarded by the jury, or taken into the account in determining any issue in this case."

It will be remembered that one of the objections made to the will was, that it was procured by the undue influence of Catharine Kessinger. The charge asked, it may also be observed, was relevant to the case made by the evidence; therefore, if it contained a correct statement of the law, it should have been given. We are not able to see that the fact of marriage or absence of marriage, between the testator and Catharine, could have anything to do with, or have thrown any light upon, the question as to the testator's soundness of mind. But the charge was broad and covered all the issues in the cause; and hence, if the fact was in any way material on the issue of undue influence, the charge, in the broad terms in which it was asked, was correctly refused.

If the law be, that whatever influence may be rightfully and duly exercised by a wife in procuring the execution of a will by her husband may also be rightfully and duly exercised by a woman with whom a man is living in a state of adultery, then the charge should have been given; otherwise not.

We are of opinion that there is a difference in the two cases, and that an influence when exercised by a wife might be lawful and legitimate, but which, if exercised by a woman occupying merely an adulterous relation to the testator, might be undue and illegitimate. This must be so from the very nature of civilized human society, and the

domestic relations of life. Without entering upon any general discussion of the question, we content ourselves with a reference to the authorities which support this view. 1 Redf. Wills, pp. 531–2–3; *Dean* v. *Negley*, 41 Penn. St. 312.; *Monroe* v. *Barclay*, 17 Ohio St. 302; *Delafield* v. *Parish*, 25 N. Y. 9. It follows that the charge asked was correctly refused.

There were several other instructions asked by the appellants and refused, all bearing on the question of undue influence, and having no relation whatever to the testator's soundness or unsoundness of mind. We have not examined these instructions carefully, with a view to determine their correctness for the reason that if error was committed in refusing them, the error cannot reverse the judgment.

If the testator was of unsound mind at the time of the execution of the will, as was found by the jury, the will cannot stand, whatever may be the result of the issue on the alleged undue influence. Had that issue been found for the appellants, or had there been no charge of undue influence in the complaint, the verdict of unsoundness of mind on the part of the testator, if permitted to stand, is decisive against the will. One fatal objection to the will destroys it as effectually as many.

It is claimed that the verdict, finding the testator to have been of unsound mind at the time of the execution of the will, is not sustained by, and is contrary to, the evidence. The evidence on this point is conflicting. Perhaps it predominates against the verdict. There is, however, considerable evidence which sustains the verdict. The will was executed April 10th, 1867. Dr. James H. Walker was a physician who attended the testator in his last sickness. He had known the deceased four years before his death, and attended him as his physician in April and May, 1867, and for about a year prior thereto. The deceased died of dropsy and paralysis; and was, in the opinion of the witness, of unsound mind during the latter part of his acquaintance with him. G. T. Simpson testified that he had known the deceased for twenty-five years. Was of opinion he was

not sane. Discovered it on going with him to Newport, Ky., to see a physician. On the way, the deceased forgot the business on which, and the place to which, they were going, until reminded of them by the witness. Other witnesses express opinions of the testator's unsoundness of mind, based on facts stated, some of which would be quite unlikely to occur with a man of sane mind. On the other hand, there is a good deal of evidence tending to show the testator's sanity. In this conflict we cannot disturb the conclusion arrived at by the jury on this point.

There *is* no error in the record, for which the judgment can be reversed.

The judgment below is affirmed, with costs.

*B. F. Claypool, J. Brown,* and *T. B. Redding,* for appellants.

*J. H. Mellett* and *M. E. Forkner,* for appellees.