MAY TERM, 1894.

---

Alexander T. McGill, Ordinary.

Abraham V. Van Fleet, Vice-Ordinary.

---

| 52 | 801 |
| 62 | 319 |
| 62 | 714 |

Elise Strassheim Arnault

*v.*

Helene Arnault.

1. The existence of influence which arises from unlawful or immoral relations, operating on a testator when his will is made, does not raise a presumption against the instrument, but will be regarded as a significant fact, which calls for a close and suspicious scrutiny.

2. The law permits a man to leave all his property, which he may, by will, dispose of, to his mistress, and to ignore his wife, if he does so with free, sound and disposing mind, pursuant to the formalities which the law prescribes. .

51                    [801]

On appeal from a decree of the Hudson county orphans court, which denies probate to a paper purporting to be the last will of Pierre Arnault, deceased.

*Mr. Joseph S. Parry*, with whom was *Mr. Emile Schultze, Jr.* (of the New York bar), for the appellant.

*Mr. Robert L. Lawrence* for the respondent.

THE ORDINARY.

Pierre Arnault, who had been a successful wine merchant in the city of New York, died at his residence in Jersey City, on the 30th day of December, 1891, leaving him surviving, as the legitimate claimants upon his bounty, a widow and two children by a former wife, from which former wife, according to the testimony of his widow, he was divorced; one child, a daughter, Clothide by name, who is now married and a resident in Switzerland, and the other, a son, named Isaac, who died after his father, leaving a widow; and also those to whom the disputed paper gives his estate—Elise Strassheim, who lived with him as his wife for the last eleven years of his life, and her daughter by him, Adele, now about thirteen years of age.

The estate he left consisted of some household furniture and his wine business in the city of New York, valued together, as counsel agreed at the argument, at five or six thousand dollars.

The will names Elise Strassheim as "Elise Strassheim Arnault," styles her as Arnault's wife and bequeaths and devises to her all his property save $5,000, which she is directed to hold in trust and pay with interest, at five per cent. per annum, to the child, Adele, when she shall reach the age of twenty-one years.

The proofs afford little insight to the life of Mr. Arnault prior to his marriage with the respondent.

It appears that he had a former wife, the mother of his children, Clothide and Isaac, from whom he had separated, and that the two children resided with him in New York when he first met the respondent.

In 1870 he advertised for a governess to take charge of these children, and the respondent, who was then a widow with a son, applied for and secured the position at a monthly compensation. He informed her that he had been divorced from his wife, and, after she had been in his employ some four or five months, engaged to marry her when the divorce from his wife, which she says was not satisfactory to her, should be perfected. Finally she was satisfied that the divorce was had, and the proposed marriage was solemnized. This was in the year 1870. In 1874 the respondent employed Elise Strassheim as a domestic servant, to whom, shortly thereafter, Mr. Arnault commenced to pay marked attention. He at the same time changed his conduct towards the respondent from tender consideration to a peevish fault-finding, followed later by a course of abuse and physical brutality. Within a few months the respondent, incensed by the attentions to Elise, dismissed the latter from her employment. Thereafter, according to the testimony of the respondent, Mr. Arnault and Elise sought the society of each other, and Arnault continued to ill-treat the respondent until late in the year 1878, when he attempted to procure a divorce from her, alleging as the ground that she ill-treated him. In this suit he was defeated in July, 1879, but during the same month, in consideration of an undertaking upon his part to pay the respondent $8 weekly, he secured from her an agreement to their separation. In the meanwhile, Elise had gone to Europe. She returned in 1880, and was sought out by Mr. Arnault or his daughter, and installed as the housekeeper of his residence. While she acted in this capacity, he commenced an intimacy with her which resulted in her pregnancy. The impropriety of her longer remaining in the house with his daughter, led him to establish her in apartments in another part of New York city, where he and she lived together as Mr. and Mrs. Strassheim. They continued in this way until 1882, when the daughter married and went away, and then Elise, with her child, Adele, who had been born, returned to his residence, where Elise lived with him as his wife and became known as Mrs. Arnault. Later they moved to Jersey City, where the same relations were

maintained and they continued together until he died. Thus they lived as man and wife for eleven years. During all that time, the respondent, knowing his relations with Elise, without, so far as appears, seeking a reconciliation of her marital relations, accepted the weekly sum he agreed to pay her.

The probate of the will is resisted, upon the ground that it is the product of undue influence exerted by Elise Strassheim.

In support of this contention some evidence has been offered to show that, years before the will was executed, Arnault was subject to nervous and epileptic fits, and had suffered three sunstrokes, which so affected him that he became nervous, irritable and erratic. This evidence is vague, and far from satisfactory. But whatever its character may be, it is effectually overcome by the evidence upon the part of the respondent, which establishes beyond question that, although Arnault was of excitable temperament, he possessed a clear and strong mind, capable of the successful management of an extensive business until a short time before his death. The latter evidence comes from Arnault's lawyer, his family physician, his employes and business cotemporaries with whom he continually dealt, and abundantly proves that he was not either mentally or physically an apt subject for that control which must exist to destroy free agency and constrain the person whose act is brought in question to do that which is against his will and what he would not have done if left to himself, or, in other words, an apt subject for undue influence.

It can scarcely be doubted, after an examination of this case, that Mr. Arnault sincerely loved Elise Strassheim, or that that love had its influence over him. His voluntary life with the woman for eleven years exhibits the potency of that influence. I do not doubt that his love for her and her child produced the will in question, but I fail to find any proof that Elise exerted her influence directly in the procuration of the will. On the contrary, the evidence is, as hereafter appears, that the will was not directly or indirectly her act, but exclusively his own.

Every will is the product of some influence. The influence which arises from legitimate family and social relations comes

Arnault *v.* Arnault.

without suspicion or taint of illegality, and there can be no presumption that it is unlawfully exercised merely from the fact that it appears that, when the will was made, the testator was surrounded by it, and it operated upon his mind to induce the testamentary disposition.  It is only when such influence is shown to have been unduly exerted over the subject of willmaking, so as to constrain the testator to do that which he would not have done if left to himself, that the law condemns it.  Nor does the influence which arises from unlawful or immoral relations raise a presumption against the validity of the will, but as the law abhors immorality, when the influence which produces a will arises from an immoral relation, its existence, standing as a significant fact, will be closely and suspiciously scrutinized by the courts.  Particularly is the necessity for such scrutiny emphasized when the will prefers the influence of a mistress, usually predicated upon sensual charms and meretricious arts, to the just and honorable influence of a lawful wife, attributable to purity, virtue and affection.  However, the law allows a man to leave all the property he may dispose of by will to his mistress, and to ignore his wife, if he does so with free, sound and disposing mind, pursuant to the formalities which the law prescribes.  *McClure* v. *McClure, 86 Tenn. 173; Kessinger* v. *Kessinger, 37 Ind. 341; Munroe* v. *Barclay, 17 Ohio 302, 316; Matter of Mendorf, 110 N. Y. 450; Dean* v. *Negley, 41 Pa. St. 312; Rudy* v. *Ulrich, 69 Pa. St. 177; Main* v. *Rider, 84 Pa. St. 225.*

It is a modifying circumstance in the relation existing between Arnault and Elise Strassheim, which is to be regarded in a suspicious scrutiny of this case, that their life together, at least when the will was made, partook more of the connubial than the meretricious character.  She was introduced by him as his wife, and in her conduct assumed the part of a virtuous and affectionate wife.  He recognized her child as his, and permitted it to call him "papa."  That the family relation existed with her and her child is well demonstrated by the language of his announcement of his will to her—"Mamma, here is a piece of paper for you."

The will was executed in the office of Theodore Connolly, a member of the New York bar in excellent standing, upon the day on which it bears date, after its subject had apparently been carefully considered by Mr. Arnault, at two or three interviews respecting it, with Mr. Connolly. He did not tell Mr. Connolly about his relations with Elise. He instructed that, in the will, she should be styled " my wife, Elise Strassheim Arnault," and, upon Mr. Connolly's suggestion that the word " wife " alone would be sufficient to identify her, he replied, " I know why I want it in that way, and you put it as I want it." Mr. Connolly had then known him as a client nine or ten months, and, deeming him to be of sound and clear mind, obeyed him without further suggestion.

Elise Strassheim testifies that she did not know anything about the will until after it was executed, and Mr. Arnault brought it home and gave it to her, with the remark already quoted, " Mamma, here is a piece of paper for you." She says that then she looked at it sufficiently to see that it was endorsed as his will, and threw it upon the table, saying that she did not want it, her meaning being that she preferred to have him live than to die and leave a will in her favor. She says that he then took it up and put it in his safe among other papers, where, after his death, she found it. She says, also, that he had repeatedly before then told her that he had no one to look out for but Adele and herself.

Under the circumstances of the case, this will does not appear to me to be one which should be characterized as wholly inofficious or unnatural. It is clear that the testator had no affection for the respondent. He tried to rid himself of her by divorce, and, failing in that, procured from her an agreement that she would stay away from him as long as he paid her a weekly sum, and he punctiliously paid her that sum and kept her away, until he died. His daughter had married and gone to Europe to live. His son had grown to manhood. His estate was small. In this situation he bestowed the bulk of it upon the bastard child whom he loved, and who, through his act, must bear reproach as long as she lives, and gave the small remainder to her who

had sacrificed her virtue to him, and for him had submitted her reputation for morality to an indelible stain.

As I have said, I do not find any evidence to establish the exertion of undue influence in the production of this will. On the contrary, the evidence makes it clear that the instrument was the product of Mr. Arnault's spontaneous act. Observing the formalities which the law prescribed, possessing capacity and acting freely, he had the legal right to make it. *Smith* v. *Smith, 3 Dick. Ch. Rep. 566, 590.*

The decree of the orphans court will be reversed.