(101 App. Div. 518)

## PLATT v. ELIAS.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. EXTORTION—RECOVERY OF MONEY—INJUNCTION PENDENTE LITE—EVIDENCE.

Plaintiff, a retired business man, 84 years of age, of large means, and in feeble health, had been infatuated for nearly 18 years, and had had illicit intercourse, with defendant, a negro prostitute, and during such period had paid her $685,385, as he alleged, to prevent her threatened exposure of his relations with her; but, in an examination of defendant on a criminal charge, plaintiff repeatedly stated that he was not afraid of anything she might do, and that no threats were made by her that would justify any claim of extortion. In an action for an accounting for the money claimed to be so extorted, there was no proof, except the general allegation, on information and belief, that defendant had no means except moneys paid to her by plaintiff, that the property, the disposition of which plaintiff sought to enjoin, was furnished by plaintiff. She denied all the allegations of false representations and extortion, and it did not appear but that the payments, which covered a period of eight years, were made when plaintiff was in full possession of his faculties. *Held*, that the facts were insufficient to justify an injunction under Code Civ. Proc. § 604, authorizing an injunction pendente lite where it appears that defendant, during the pendency of the action is doing, procuring, or suffering to be done an act in violation of plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

2. SAME—RECEIVER.

The facts were also insufficient to sustain an order appointing a receiver of defendant's property.

Hatch, J., dissenting.

Appeal from Special Term, New York County.

Action by John R. Platt against Hannah Elias and others. From an order (89 N. Y. Supp. 1015) granting an injunction pendente lite restraining certain banks and trust companies from transferring certain funds alleged to belong to defendant Elias, she appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Frank S. Black, for appellant.
L. E. Warren, for respondent.

INGRAHAM, J. This action was brought against this appellant and various banks and trust companies in the city of New York to require an accounting by the defendants of certain moneys alleged to have been obtained by appellant, Elias, from the plaintiff. The plaintiff demands that certain real property described in the complaint, and certain personal property and bank accounts and deposits held by the defendants in the name or for the benefit of the defendant Elias, be impressed with a trust in favor of the plaintiff, and that the defendants be declared to hold the same as trustees for the plaintiff, and that the defendants, and each of them, be required to transfer and pay over the same, and any accumulations, rents, profits, interests, or income, to the plaintiff; that the defendants, and each of them, be perpetually enjoined from interfering with, transferring, or disposing of said real estate, or with the

personal property and money so deposited with or held by them; that a receiver be appointed to collect and hold all rents derived from said real estate, and to take and hold the personal property described in the complaint, during the pendency of the action; and for other and further relief. The complaint alleges that the plaintiff is a man 84 years of age, and for some years in feeble health, and has retired from business; that the defendant Elias is a negro woman, the divorced wife of one Davis, and is of bad character and reputation; that on the 1st of January, 1896, the defendant Elias had no property, nor any pecuniary means; that prior to January, 1896, the plaintiff formed the acquaintance of the defendant Elias, and was induced by her to have illicit intercourse with her; that, after the defendant Elias had induced the plaintiff to have such illicit intercourse with her, she threatened to expose the plaintiff's relations with her to her husband, and to the plaintiff's family and friends and acquaintances, and thereby subject the plaintiff to public scandal, and bring him into disrepute with his family, friends and acquaintances, and the public, and threatened that, unless the plaintiff would pay over to her large and divers sums of money, she would expose such illicit relations to her husband; that the plaintiff, being an old man, and in feeble health, and having great fear of exposure and scandal, which would bring him into disrepute and disgrace him in the eyes of his family, friends, and former business acquaintances, and being in fear of great bodily harm, did at various times between the 1st day of January, 1896, and the 25th day of May, 1904, pay over to said defendant, without any consideration whatever, large sums of money, aggregating the sum of $685,385. The complaint further alleges that portions of this money were invested in certain real estate described in the complaint, and were also deposited in various trust companies and banks and savings banks, defendants in this action.

Upon this complaint, and an affidavit of the plaintiff which reaffirmed some of the allegations of the complaint, and stated that deponent's knowledge of the facts alleged upon information and belief was the statements made by the defendant Elias, the plaintiff applied to the Special Term for an injunction during the pendency of the action, as prayed for in the complaint. In answer to this application, an affidavit of the defendant Elias was submitted, which denies all allegations of extortion and false representations; and there was also submitted an examination of the plaintiff taken as the complainant in a criminal charge against this appellant, from which it appears that these allegations in the complaint as to the payment of money to the defendant were made without any knowledge on the part of the plaintiff, and that the allegations of extortion and false representations and fraud were not sustained by any recollection of the plaintiff. There was no competent proof in this record, considering the statement of the plaintiff upon this examination in the criminal proceeding, which would justify a finding of facts sufficient to sustain a cause of action against anybody. The payments are alleged to have extended over a period of eight years. His examination would appear to disclose a man whose mental

power was considerably impaired, but there is no evidence to show that when the payments were made he was not in full possession of his faculties and knew what he was doing, and voluntarily gave the appellant any sum of money that he gave her. It is also apparent from the examination that the plaintiff had no recollection of the various payments that he made to her, and the payments as alleged in the complaint were not in any way verified. Nor is there proof that the real property owned by the defendant Elias was paid for by the plaintiff, or with money furnished by the plaintiff, or that the money deposited in the various banks and trust companies was furnished by the plaintiff, except the general allegation, upon information and belief, that the defendant Elias had no means except the moneys paid to her by the plaintiff.

The whole case is based solely upon the fact that an old rich man had paid large sums of money to a negro prostitute, and a court of equity is therefore asked to assume that all moneys in the hands of this negro prostitute came from the plaintiff, that she had procured the money from him by fraud or duress, and that he was entitled to recover from her everything that she had. The order granted is that during the pendency of the action, and until the further order of the court, the defendant Hannah Elias be enjoined and restrained from selling, conveying, incumbering, disposing of, or otherwise interfering with the real and personal property belonging to her; and the various banks and trust companies were enjoined from paying out any deposits standing in her name, or any other personal property held by them for her; and appointing a receiver of all real and personal property, other than the moneys on deposit in the defendant banks and trust companies, now in the possession or under the control of the defendant Elias, her agents or servants, and all stocks, bonds, bankbooks, mortgages, certificates of deposit, or other evidences of indebtedness belonging to the said Hannah Elias, or held in trust for her, or for her account.

The learned judge who granted the injunction puts it upon the ground that the action is brought to recover money paid by the plaintiff because of the defendant's threats to expose him, and because of the fear that she would carry out those threats if he did not meet her demands for money, and that, if she acquired the plaintiff's money in the manner complained of by him, she acquired it feloniously, and money so acquired, and the proceeds and profits thereof, may be followed by the real owner and recovered, and a court of equity will impose a trust thereon in his favor. But taking the allegations of the plaintiff in his complaint and affidavit, and the evidence before the police magistrate, it is apparent that the plaintiff's statement in his complaint was not justified by any recollection of his as to his relations with the woman. Upon that examination he repeatedly states that he was not afraid of anything that she might do; and that no threats were made by her that would justify any claim of extortion.

To justify an injunction, the plaintiff must bring the case within subdivision 1 of section 604 of the Code of Civil Procedure. That subdivision provides that:

"Where it appears, by affidavit, that the defendant, during the pendency of the action, is doing, or procuring or suffering to be done, an act, in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted restraining him therefrom."

Now, nothing of this kind appears in the affidavit upon which this motion was granted. There is no evidence that the appellant intends to dispose of this property, or that the plaintiff will be entitled to recover any specific property in the possession of the defendant. As I view it, the plaintiff is no more entitled to an injunction in this action than in any case in which a cause of action is alleged against a defendant, and the plaintiff then asks to sequestrate all of the defendant's property, so that it may be held to apply to any judgment which he may obtain against the defendant.

For the same reason, I think the order appointing the receiver was unjustified. There was no property in the hands of this defendant shown to be the property of the plaintiff, or to which he was entitled. We may assume that the facts alleged in the complaint are sufficient allegations to sustain a cause of action; but, before the court is justified in appointing a receiver, the facts upon which such relief is granted must be proved by competent legal evidence. I think, taking all these facts together, that there was no evidence of the facts necessary to justify the granting of such relief. There was certainly nothing in the relation of these parties to justify a presumption that all the money in the hands of the appellant was obtained from plaintiff by extortion or duress, and there is an absence of proof that the plaintiff was not in full possession of his faculties, or that whatever money he gave to the appellant was not voluntarily given.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

PATTERSON, McLAUGHLIN, and LAUGHLIN, JJ., concur.

HATCH, J. (dissenting). The conceded facts in this case show that John R. Platt, the plaintiff, some 18 years prior to the present application, became intimate with a negro prostitute named Hannah Elias, and from that time down to the year 1904 he continuously had illicit relations with her. For the most part of that time she was a common prostitute. At the inception of the illicit relations, Platt was about 67 years of age, and Hannah Elias about 20. The evidence discloses that Hannah Elias soon began to exercise a marked influence over Platt. She early threatened to expose the illicit relations existing between them, and to bring him into the scandal and disgrace which publicity would involve. She also excited his fears by representing that he was liable to physical violence at the hands of her husband, and also threatened to charge him with the paternity of an illegitimate child. By these means and others, and by constantly ministering to the debased passions of Platt, she came in the course of time to have him almost, if not

completely, under her control and influence. Beginning with the year 1896, when Platt was about 77 years of age, she induced him to advance her $19,075, and in the several years following, down to about May 25, 1904, she received annually from him sums of money; the amount in 1893 being $186,409, and for the portion of the year 1904, $31,533; in all, amounting to the sum of $685,385. Considering the payment of this enormous sum of money by a white man to a negro prostitute, based upon no other consideration than that of illicit intercourse, it does not need a great amount of additional proof to establish the existence of a supreme and controlling influence of the prostitute over the man, and in the latter a weakness as pitiable as it is deplorable. No number of written or spoken words can add strength to the condition which these undisputed facts establish, and not a single one of them is denied or controverted in the slightest degree. It seems to me that it would be a travesty on justice if the law can afford no relief in protection of such of this money and property as remains in the hands of Hannah Elias until a final judgment and determination of the court upon a trial be had. As early as 1741, Hardwicke, Lord Chancellor, declared unenforceable a note given by a man to a common prostitute, based upon the consideration of illicit intercourse. The basis of the decision, as expressed by the Lord Chancellor, is in these words:

"And the ground wherefore the court relieves against these securities is from a presumption that as women of the town are full of design and artifices to impose upon people, that they therefore do make use of such artifices, and are guilty of some fraud or imposition in getting such notes; and this presumption is made from general principles of policy, to discountenance the credit of such securities. Therefore, to prevent women of the town taking any advantage of their artifices, the court says such a general presumption shall run against them that they may take no advantage of such securities." Robinson v. Coc, 9 Modern R. 263.

The rule thus announced has been followed by the courts in this country. Leighton v. Orr, 44 Iowa, 679; Hanna v. Wilcox, 53 Iowa, 547, 5 N. W. 717. In the latter case the court said:

"The exercise of unlawful influence will be presumed when the parties to a deed live in adulterous relations, in the absence of proof of a lawful consideration. These rules are in accord with sound reason and legal principles. Their application will tend to restrain immorality. No paramour should be permitted to enjoy the wages of her sin, which she obtains through the generosity of her victim, stimulated by her ministering to his passions."

Dean v. Negley, 41 Pa. 312, 80 Am. Dec. 620; Shipman v. Furniss, 69 Ala. 555, 44 Am. Rep. 528; Bivens v. Jarnigan, 62 Tenn. 282; Kessinger v. Kessinger, 37 Ind. 341. In Cooley on Torts (2d Ed.) p. 603, the learned author states:

"Where a transaction is brought about while the parties are living in illegal sexual relations, it is always open to suspicion of fraud or undue influence; and if it is a gift or a sale for an inadequate consideration, or if it is specially beneficial to one party rather than to the other, the party benefited by it will be under the necessity of showing that no advantage was taken, and that it was the result of free volition."

It is evident from these authorities that the law is not powerless to grant relief in a proper case, and, if this be not such a case, I am at a loss to imagine one.

It is said, however, that the testimony of Platt, taken upon a criminal proceeding against Hannah Elias, tends strongly to establish that the payment of these sums of money was voluntary upon his part, and therefore he is not entitled to relief. Perhaps this is true, but the testimony also establishes that Hannah Elias, when the illicit relations began, was a young woman, about 20 years of age. When the plaintiff began to give her money, she was a strong woman, physically and intellectually. Platt was a feeble old man, physically and mentally, and, in proportion as he decreased in physical and mental power, his gifts to her increased in size. When he testified in the police court, he was an old man, in his dotage, with a rambling intellect, insensible alike to his breach of morality or to his present condition. It presented a spectacle of strength and viciousness overreaching old age and weakness. The relations themselves, and the relative condition of the parties, coupled with the magnitude of the amount extorted, establish beyond peradventure that the voluntary character of the gift was such as a tigress exacts from a helpless victim.

It is further said that the money and property which has been tied up by the injunction order is not shown to have been the property and moneys received by Hannah Elias from Platt. Upon this subject it is sufficient to, say that the complaint avers it to be such property and money, and the affidavit of Hannah Elias does not deny such averments. She alleges that she had considerable property and money prior to 1896, and she admits that during the years specified in the complaint she received divers sums of money, the amount of which she is unable to state; and then she denies any intention of disposing of the money or property, except for the support and maintenance of herself and her child. The admitted facts, upon this subject, which show the character of the woman, and her ability and means of obtaining money and property, make it plain that the great bulk of that of which she is now possessed must have come from the source averred in the complaint, and the failure to deny that it did not is an admission of the fact. The liability of waste and improper disposition of the property sufficiently appeared to authorize the exercise of the discretionary power in granting the injunction. Van Orden v. Ledwith, 44 App. Div. 580, 60 N. Y. Supp. 802. Under the peculiar circumstances of this case, and the relations of these parties, the discretionary power thus exercised should not be interfered with.

The order should therefore be affirmed, with $10 costs and disbursements.