## GUTH v. GROVES et al.

District Court, S. D. New York.
March 18, 1942.

Sydney A. Syme, of White Plains, N. Y., and Thomas H. Matters, Jr., and Donald Horne, both of New York City, for plaintiff.

Dorsey, Adams & Walker, of New York City (F. W. H. Adams, Abraham N. Geller, and Robert B. Block, all of New York City, of counsel), for defendant Wallace Groves.

Cravath, de Gersdorff, Swaine & Wood, of New York City, for defendants Walter S. Mack, Jr., Edward A. LeRoy, Jr., W. W. Colpitts and John A. Stevenson.

White & Case, of New York City, for defendant Albert E. Winger.

O'Connor & Farber, of New York City (John C. Farber and Arnold T. Koch, both of New York City, of counsel), for defendant Phoenix Securities Corporation.

BRIGHT, District Judge.

Plaintiff, a stockholder since 1936 of fifty shares of the common stock of the defendant Phoenix Securities Corporation, an investment trust, in behalf of himself and other like stockholders, seeks an injunction and receiver pendente lite. His action is a derivative one. The allegations of his complaint, practically all of which are upon information and belief, in so far as they seek relief, may be divided into six subdivisions, as to all of which it is claimed the individual defendants', nominees of and controlled by the defendant Groves, have conspired and concurred with him in defrauding Phoenix.

■ The first of these subdivisions has to do with International Equities Corporation, General Investment Corporation, and Standard Investing Corporation, all investment trusts, of which between November 1, 1935 and July 14, 1936, Groves acquired voting control through one Warriner, now a fugitive from justice. It is alleged that on March 16, 1937, Groves sold his stock in International to Standard at a profit of $1,764,929.25; he conducted several profitable sales through General, namely, on November 27, 1936, when it sold one of its assets at a personal profit to Groves of $794,996.66, in January, 1936, when he sold General's own stock to General on two occasions at a profit to himself of $308,310, and a further transaction involving a similar sale of 105,159½ shares of the same stock at an unknown profit; that he acquired voting control of Standard by causing Phoenix to sell to General on December 17, 1936, its 163,000 shares of stock in Standard at $3.93 a share, and General thereafter and prior to March 1, 1937 acquired an additional 41,854 shares of Standard at $4.10 per share, a total price of $812,993 which stock General sold on March 2, 1937 to another investment trust for $350,000. There does not seem to be any dispute as to the profits made in these transactions, but there is a real contention as to whether or not they might properly belong to Phoenix. With the one exception stated, they did not involve the use of any of the property or cash of Phoenix. All of the transactions were made through the corporate machinery of the other corporations, and it would seem that the only claim of the plaintiff that such profits belong to Phoenix is based upon the proposition that they were competing investment trusts and that because Groves was under a fiduciary duty to Phoenix, any transaction in which he might be involved in a competing investment trust was a violation of that relation and justifies the claim that the profits belong to Phoenix. Whether or not that is so, it would seem to me, should be left to a full investigation at a trial. In one of the instances, it is obvious that Phoenix could not have acquired the control because of opposition engendered by the fact that Groves was associated with it. The complaint also inferentially, if not directly, criticizes the use of Phoenix property to acquire control of other corporations. It would seem to me that this particular branch of the transaction cannot at this time be made the basis for the relief now sought. Whether or not there can be a recovery by Phoenix of profits made by or in other corporations presents a nice question of law and need not now be determined in the absence of a full disclosure of the facts.

■ The second subdivision of the complaint has to do with loans claimed to have been made by Phoenix from the defendant Marine Midland Trust Company of New York, which loans increased from $705,000 in 1938 to $2,727,425 in 1940, for which Phoenix pledged as collateral its shares of Loft, Inc., now known as the Pepsi Cola Company, and of the Celotex Corporation having a value of $13,584,750, and which loans, it is alleged, were made in order to obtain control and domination of other corporations, but as to which no loss or damage is alleged to have occurred to Phoenix. If these loans were made in the ordinary course of business, without any wrongdoing or fraud, and no facts are shown otherwise, I doubt if this court would be justified in interfering therewith or in the management which concurred therein.

■ The third subdivision relates to losses claimed to have been sustained in the operations of Phoenix in 1938 and 1940, but as to which there is no allegation of wrongdoing or of any unlawful action on the part of the defendants causing the same; as to losses by reason of the exchange in 1938 of 109,360 shares of com-

mon stock of Certainteed Products Corporation, at a loss of $381,980.61, which loss, it is charged, upon information and belief, was due entirely to the dishonest machinations of Groves and the individual defendants; and as to a depletion in capital between August 1931 and August 1941 of over $10,000,000 claimed to have been caused by dishonest management; and a loss of $4,500,000 in the sale at an inadequate price of Autocar stock. All of these allegations are upon information and belief. The defendants present facts which tend to show that the exchange of the Certainteed stock and the sale of the Autocar stock were entirely proper, were transactions in the ordinary course of the Phoenix business and did not result in the losses claimed. As to the depletion in capital facts are shown from which it may be concluded that most of the depletion claimed occurred before Groves or plaintiff became stockholders, and since that time there has been an increase in capital of many millions of dollars. The facts are in sharp dispute; the transactions involve an examination of the internal affairs and management of Phoenix. There is not a sufficiently clear showing now justifying interference.

The fourth subdivision relates to compensation claimed to have been paid to certain of the defendants between 1938 and 1940, and to alleged exorbitant salaries, bonuses, commissions and clandestine profits to the defendants and others for their personal benefit, but neither the amounts, times of payment nor persons to whom paid are stated. No facts are shown sustaining the conclusory allegations of the complaint.

The fifth subdivision alleges, upon information and belief, payments to attorneys for legal services unnecessary for the legitimate conduct of the business of Phoenix, in minority stockholders' litigation and in settlement of the same, but there are no specifications as to whom paid, nor when, nor the amounts, nor in what particular litigation; nor are any facts shown to sustain the conclusions alleged in the complaint.

██ The sixth alleges, upon information and belief, that Groves is about to commence his sentence under a criminal conviction for using the mails to defraud, and in order to dispose of his interest in Phoenix, is causing the remaining assets of Phoenix to be sold or distributed and is about to cause a dissolution of the corporation. The only fact proven as to this is a recent distribution of Celotex stock by way of dividend, plaintiff's proportionate share of which was received by him without apparent objection. Certainly this court will not interfere with the Phoenix management and course of business without a factual showing justifying such interference.

The defendants, by their affidavits, deny that they are or ever have been dominated by Groves; that they had any part in the original manipulations of the three other investment corporations; state that the loans made by Phoenix were made in the ordinary course of business and have been reduced to $950,000, that in the conduct of a business as large as that of Phoenix, it is to be assumed that losses will, from time to time, occur; deny that there had been any depletion in capital as alleged, but, on the contrary, aver that the capital has been increased; state that the Autocar stock was sold at a favorable price and that the claim of loss in the amount stated is absurd and not the fact; that the disposition of the Certainteed stock was at an advantageous price to the company; and deny in other important particulars other allegations of wrongdoing.

The allegations of the complaint, as well as the voluminous affidavits and briefs submitted, present a rather formidable amount of reading matter which has been examined at length. In addition to the typewritten documents, plaintiff has incorporated by reference, a bound volume of proceedings before the Securities & Exchange Commission, and the minutes of the trial of Groves in this court at the time he was convicted of using the mails to defraud. Very brief references, however, have been made in plaintiff's brief to these last two documents, and I assume that the parts referred to are the only ones which plaintiff believes are helpful. I will not attempt to review all of the facts at length in this opinion. I have concluded that the plaintiff's motion must in all respects be denied for the following reasons briefly stated:

██ ██ The remedy both of injunction and receiver is extraordinary and drastic. The appointment of a receiver deprives the stockholders of their right to management and displaces the directors whom they have elected to office, and who have been acting all during the period mentioned without any apparent objection

854

on the part of any stockholder, not even the plaintiff. The plaintiff does not ask in his complaint that the directors be ousted. In order to justify the granting of such relief, there must be a clear and unequivocal showing of facts, and I do not find any such showing here. Clark v. National Linseed Oil Co., 7 Cir., 105 F. 787–794. This is particularly so where the allegations as here, are upon information and belief, and where allegations of fraud or fault are conclusory. Gerdes v. Reynolds 281 N.Y. 180–183, 22 N.E.2d 331. Where there is a substantial dispute as to the facts, as there obviously is here, it is better that preliminary relief should be denied and that the determination of the merits await the trial when all of the matters can be fully gone into. Mitchell v. Colorado Fuel & Iron Co., C.C., 117 F. 723. Hall Signal Co. v. General Railway Signal Co., 2 Cir., 153 F. 907. Behre v. Anchor Insurance Co., 2 Cir., 297 F. 986.

There is real doubt in my mind whether this court would have the right to appoint a receiver of property of which it is not asked to make disposition and solely for the purpose of acting as a custodian pending the determination of the merits. Gordon v. Washington, 295 U.S. 30–37, 55 S.Ct. 584, 79 L.Ed. 1282; Isaac v. Milton Manufacturing Co., D.C., 33 F.Supp. 732–734.

■ I do not see under any circumstances how there could be an injunction pendente lite restraining the individual defendants from the use of their own assets. There is no showing of insolvency. There are but allegations, upon information and belief, that they may secrete or dispose of their individual assets or remove them to some foreign land, but there are no facts shown tending to prove such suspicions. With the exception of the defendant Groves, who apparently has been or is about to be taken care of by a benevolent Government, the other defendants seem to be citizens of some financial standing, engaged in business here or in this vicinity, and with no reason, that is proven, to leave the realm or to dispose of their property to avoid the payment of any judgment that might be rendered here. Certainly, if injunctions may be issued to insure the payment of judgments at the end of litigation, such relief would be sought in every case. Platt v. Elias, 101 App.Div. 518, 523, 91 N.Y.S. 1079; Wright Co. v. Aero Corp., Sup., 128 N.Y.S. 726, 727.

Dissolution of a corporation can only be obtained under the Delaware law after a vote of two-thirds of the stockholders. Any distribution of property in the meantime, by way of dividend, stock or otherwise, will enure to the benefit of all stockholders in their respective proportions, and could not be prevented unless upon a showing of facts different than made here.

■ And, finally, it seems very doubtful to me whether plaintiff's complaint sufficiently complies with Rule 23(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. That rule requires the complaint to set forth with particularity the efforts of the plaintiff to secure from the directors such action as he desires or the reasons for not making such effort. It is clear he has made no demand upon the corporation to bring this action, nor any effort to secure from the directors any relief which he here seeks. He alleges as his reasons for not making such demand or effort, "that such demand would have had to be made upon the very individuals who profited by the fraudulent acts herein alleged, and who control and dominate said Phoenix Securities Corporation, and said demand would have been futile". It is not alleged in the complaint that any of the defendants, other than the defendant Groves, has unlawfully profited by anything set forth in the complaint. Further than this the acts criticized in which there was any secret profit are alleged to have occurred between November 1, 1935 and March 16, 1937. The defendant LeRoy was not elected a director until August 31, 1938, or the defendants Samuel J. Beckford and Albert E. Winger until August 31, 1939. The defendants Sommerwerck and Stevenson were never directors except Stevenson acted as such for three short periods. LeRoy has been treasurer since August 31, 1938, Sommerwerck assistant secretary and assistant treasurer since August 31, 1939, and Stevenson secretary since February 28, 1934. Groves has not been a director or officer since February 1941. Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827; Norman v. Federal Mining & Smelting Co., 180 App.Div. 325–335, 167 N.Y.S. 794.

Any stay now in force is vacated, and plaintiff's motion is in all respects denied.

Settle order on notice.