A final decree was entered in this cause dismissing the bill of complaint. Appeal therefrom having been taken, I file the following reasons for having advised the decree.
The bill of complaint was filed by the children and grandchildren, heirs-at-law and next of kin of James W. Gordon deceased and by the administratrix of his estate, to set aside conveyance by Gordon of real estate in Lyndhurst owned by him in fee, to himself and defendant Mabel Reilly as joint tenants; also to have declared void a change in beneficiary in two policies of insurance on Gordon's life, by which change said defendant was named as beneficiary under said policies; also to have said defendant account for personal assets belonging to deceased.
The main facts are not in much dispute. Gordon died intestate March 23d 1944, at the age of seventy-four, leaving him surviving four children and children of a deceased son, as his heirs-at-law and next of kin. He died seized of no real property and the value of his personal estate, which consisted of an automobile, household furniture and two weeks wages of $80, was about $500 exclusive of about $350 received by his administratrix from some form of life insurance. His wife had died February 24th, 1938. He had been an employee of Public Service Co. for nearly twenty-five years, most of the time as an engineer but in later years as a janitor, and was working at his job regularly up to the day before his death. His health was good and his mental condition normal. He died suddenly at his Lyndhurst home. *Page 557 
All of Gordon's children, except one, resided at some distance from him. He was on friendly terms with them but after his wife's death he preferred to continue to reside alone in his home, rather than with his children and beside, his place of work was in Jersey City. The defendant Mrs. Reilly resided in Jersey City with her widowed mother, her sister, her brother-in-law and her son who is about twenty-eight years old and who was at the time of the hearing, in military service in Italy. Mrs. Reilly is the widow of a Jersey City fire captain and lives on a pension. At the time of the hearing she was fifty years of age. Gordon had been a friend of her family upward of thirty years and had visited them frequently during that period. About four months after Gordon's wife died he called at defendant's home and was blue and melancholy — undoubtedly he was a lonely man — and thereafter his calls became more frequent and he took defendant out to movies and to restaurants. Two months after his first visit at defendant's home he told her it was terrible to be home alone and asked her to come to his Lyndhurst home as a companion and she consented to go Fridays and remain until the following Monday morning, cooking for him and keeping his house clean, returning after each week-end to her mother's home. A bedroom at Gordon's home was assigned to her which she occupied, furnishing it with her own furniture. That arrangement continued up to the time of Gordon's death and his children knew of it because they visited at his home occasionally during that six-year period. Defendant was not paid for her services and at times she brought food to his home and made Gordon small loans which he repaid.
A bank account was opened May 7th, 1938, in their joint names and all money deposited therein was that given from time to time by Gordon to defendant, presumably saved from his wages, to deposit in that account. All withdrawals from the account were made by checks signed by Gordon and the account was closed in September, 1940, after which time Gordon gave defendant no more money and there is no testimony to show what he did thereafter with his wages, but presumably he had to use what balance he had in the joint *Page 558 
account and what money he could save from his wages, to meet the monthly payments required on the mortgage note next mentioned.
In November, 1938, Gordon was granted a loan of $4,500 by a Rutherford bank through its Lyndhurst branch. The loan was on his note payable in one month, endorsed by Mrs. Reilly and secured by Gordon's mortgage on his home. It was renewed monthly on the same type of note and was finally paid in full by Gordon October 26th, 1942. Part, at least, of the loan was used to discharge a prior mortgage on the property.
The conveyances attacked are dated May 3d 1940, recorded May 7th, 1940, and the undisputed testimony with respect thereto is that without defendant's knowledge, solicitation or suggestion, Gordon called on the lawyer who had represented the Rutherford bank in the matter of the mortgage loan to him. He went alone April 26th, 1940, and told the lawyer he wanted to "place Mrs. Reilly's name on his deed" and wanted her to have the property in the event anything happened to him, and he sought the lawyer's advice. Their conference occupied about an hour during which the lawyer (who did not know Mrs. Reilly) questioned Gordon as to the reason for his desire and was told by Gordon that Mrs. Reilly was his housekeeper and was taking care of his home for him, which was the only way he could maintain it and that she had treated him fairly and honestly and he wanted to reward her for her services. The lawyer told Gordon he was taking a serious step and if he put her name on the deed, he would be unable to sell or mortgage without her consent and would be subject to her will. The lawyer suggested that he make a will in her favor, explaining that during his life he would have complete control of his property but Gordon rejected the suggestion. The lawyer made an appointment for the execution of the necessary deeds for about a week later and told Gordon that Mrs. Reilly should be present for the purpose of delivery. They both appeared at the appointed time and the lawyer explained to Gordon the deeds he had prepared, one from Gordon to the lawyer's father as an intermediary and the other from the father to Gordon and Mrs. Reilly as joint tenants, and he told Gordon what the effect *Page 559 
of a joint tenancy would be. Throughout the transaction at the lawyer's office Mrs. Reilly just sat there and did not participate in the conversation. After the deeds had been executed and the lawyer had recorded them, he mailed them to Gordon who kept them in a desk in his home until they were placed in a safe deposit box as hereinafter stated.
A clearer case of voluntary conveyance by way of gift made by one in his right mind after receiving independent advice and without any influence exerted by the donee, cannot be imagined and it will be noted that the conveyance, although it may have been all the property Gordon then owned, did not strip Gordon of all means of support because he earned steady wages for four years thereafter up to his death, still had a home and the right to sole ownership of the property in the event he survived Mrs. Reilly. The conveyances under which Mrs. Reilly now claims ownership, must be held valid. LeGendre v. Goodridge, 46 N.J. Eq. 419; affirmed, 48 N.J. Eq. 308; James v. Aller, 68 N.J. Eq. 666; Fretz v. Roth, 70 N.J. Eq. 764; Kelso v. Kelso, 96 N.J. Eq. 354; Stewart v. Stewart, 129 N.J. Eq. 481.
The parties to the transaction lived in a friendly and intimate relation. They had confidence in each other but there is no evidence of a dominant confidential relation on the part of Mrs. Reilly toward or over Gordon. She testified that she never suggested the conveyance and that the first time she learned of Gordon's intention was when he asked her to accompany him to the lawyer's office. If it can be inferred from the evidence that the relations between Gordon and Mrs. Reilly were immoral, that is not sufficient in itself to raise the presumption that the conveyance was procured by undue influence. Arnault v.Arnault, 52 N.J. Eq. 801; Schwalber v. Ehman, 62 N.J. Eq. 314;In re Middleton, 68 N.J. Eq. 584; affirmed, Ibid. 798; Conners
v. Murphy, 100 N.J. Eq. 280; Kramer v. Mahneck, 112 N.J. Eq. 137.
Under a group life insurance policy issued to Public Service Co., Gordon, as an employee, was insured in two amounts of $1,000 each. His original beneficiary was his wife and after her death he caused change in beneficiary to be made, under one policy to his daughter and one of his sons and under the other policy to his two other sons. November *Page 560 
14th, 1941, Gordon caused a change in beneficiary to be made under both policies to Mrs. Reilly. The evidence shows that after a verbal application for the last change had been made by Gordon to his superior, he was called to the office of his employer's chief clerk and a written form of application was presented to him and after he was asked if that was what he wanted, he signed and his signature was witnessed by the chief clerk. He had brought his policies with him in order to have the change of beneficiary made and he left them with the chief clerk. After the change in favor of Mrs. Reilly had been endorsed on the policies, they were returned to Gordon and were kept in his desk in his home until they were placed in a safe deposit box as hereinafter stated. Mrs. Reilly's uncontradicted testimony was that she had not discussed with Gordon the transfer of the policies to her and had said nothing to induce him to make change of beneficiary thereunder in her favor; that she did not know she had been so named until the change had been made and Gordon handed the policies to her saying they were a present for her and that she would have enough through them to take care of him at his death. The day after Gordon's death his daughter asked Mrs. Reilly if Gordon had insurance and Mrs. Reilly replied she had the policies. She then went with some of Gordon's children to an undertaker and arranged for his funeral, obligating herself to pay the charge therefor for which the undertaker has rendered a bill for $589.79. Awaiting determination of this suit no one has paid the bill. What has been said concerning the circumstances surrounding the conveyance of title of the real estate to Mrs. Reilly, applies to the policies of insurance. The change of beneficiary in Mrs. Reilly's favor was made without her knowledge or solicitation, for the same reasons which had moved him to convey to her an interest in his real property, and all the proceedings to accomplish the change were taken voluntarily by Gordon. After the change had been made the policies were under Gordon's control and he was at all times free to make any further change of beneficiary thereunder that he might have desired.
A safe deposit box in the Lyndhurst branch of the Rutherford bank was rented in August, 1943, in the joint names of *Page 561 
Gordon and Mrs. Reilly. The reason for renting the box is not apparent. Before that time Mrs. Reilly had a safe deposit box in her own name in a Jersey City bank in which, at some time, she had placed the deeds and insurance policies removed from Gordon's desk. Perhaps the rental of the Lyndhurst box meant more convenience of access for her, or perhaps Gordon wanted the documents in a place to which he was entitled to access. It seems certain that the box was not rented for the purpose of placing any of Gordon's valuables therein because there is no evidence whatever that Gordon at any time owned personal property other than that which subsequently came to the hands of his administratrix, and the joint bank account which had been closed three years prior to the rental of the new box. All personalty he could have had after the box was rented was such savings as he might have made from the wages he received for the seven months he was employed thereafter. Mrs. Reilly's uncontradicted testimony was that Gordon had never given her any valuables such as jewelry, money or stocks and that after the new box had been rented all that she placed therein were the deeds, the life insurance and some fire insurance policies. After this new box had been rented, Mrs. Reilly visited it alone five times, the last time being the day after Gordon's death when she removed therefrom (perhaps unlawfully) the deeds and insurance policies. She could give no satisfactory explanation of her reason for visiting the box on the four other occasions but I cannot agree with complainants' inference or suspicion that it was for the purpose of removing therefrom money, securities or valuables which the evidence fails to disclose she or Gordon ever owned. I do not find that Mrs. Reilly received any personal property belonging to Gordon for which she should be called upon to account.
I add for the record for whatever bearing it may have on the issues in the cause, that Mrs. Reilly testified that after Gordon had made the conveyance to her and had caused change of beneficiary in her favor under his insurance policies, she rejected his three proposals of marriage on the ground that she had no intention of getting married and that he was an elderly man, and that he finally conceded he was too old to marry her. *Page 562